# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

IN RE                                               )
                                                    )    Case No. 09-41934-JDP
JOSEPH W. COONROD and          )
LAUNA M. COONROD,                    )    Chapter 7
                                                    )
          Debtors.                     )
_____  )

## MEMORANDUM OF DECISION

      Pursuant to an Order of Partial Recusal, Doc. No. 42, the undersigned sits in this case to address issues related to a proposed compromise of controversy. Following a hearing on November 22, 2010, that issue was taken under advisement. This Decision constitutes the Court's findings and conclusions regarding the proposed compromise.

## BACKGROUND AND FACTS

      No evidence was presented at the November 22 hearing; only argument. For purposes of resolving the pending matter, the facts are primarily drawn from the pleadings of record. To a degree they are based on assertions of the parties at the hearing. For reasons to be made clear, this Decision makes "findings of fact" only insofar as required to address the standards for approval of the proposed compromise at this time.

MEMORANDUM OF DECISION - 1

Joseph and Launa Coonrod ("Debtors") filed a voluntary chapter 7 petition on December 9, 2009, commencing this case. Doc. No. 1. Their bankruptcy attorney was and is W. Brent Eames ("Bankruptcy Counsel").[1]

Debtors were both, at filing, correctional officers employed by the Idaho Department of Corrections at a facility in Saint Anthony, Idaho. *Id.* at 34 (sched. I). Neither the statement of financial affairs ("SOFA"), nor personal property schedules, disclosed or suggested any claims or litigation in which Debtors were the plaintiffs or claimants. *Accord* Doc. No. 1 at 13-14 (relevant portion of sched. B) and 40-41 (relevant portion of SOFA, showing only litigation where Debtors were defendants).

On July 12, 2010, attorney DeAnne Casperson ("Plaintiff's Counsel") filed a Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503, Doc. No. 33 (the "§ 503 Motion"). In the § 503 Motion and a related affidavit, Doc. No. 34, Plaintiff's Counsel disclosed that she (and her firm, though for simplicity the Court refers to her alone) had been representing Debtor Launa

---

[1] Bankruptcy Counsel has never asked for leave to withdraw nor been allowed by the Court to withdraw, and is therefore counsel of record for Debtors. *See* LBR 9010.1(f). His disclosure filed under Fed. R. Bankr. P. 2016(b), Doc. No. 4, indicates that in return for the $950.00 Debtors paid or agreed to pay, Bankruptcy Counsel "agreed to render legal service for *all aspects* of the bankruptcy case, including . . . [r]epresentation of the debtor in adversary proceedings and other contested bankruptcy matters." *Id.* (emphasis added). There were no exclusions from the agreed scope of representation. *Id.* The record is bereft of any suggestion that there is any other written agreement between Bankruptcy Counsel and Debtors regarding representation, and the signed "certification" on the Rule 2016(b) disclosure indicates that it is a "complete statement of any agreement or arrangement for payment to me [*i.e.*, Bankruptcy Counsel] for representation[.]" *Id.*

MEMORANDUM OF DECISION - 2

Coonrod in a pregnancy discrimination and retaliation claim against the Idaho Department of Corrections since September, 2008, and that such claim formed the basis of a suit before the United States District Court for the District of Idaho commenced in May, 2009. *See Launa Coonrod v. State of Idaho, Department of Corrections*, Case No. CV-09-247-EJL (the "Discrimination Suit").

Plaintiff's Counsel learned of the bankruptcy case in February, 2010, apparently when receiving a letter from the chapter 7 trustee, R. Sam Hopkins ("Trustee") (a) requesting information about the Discrimination Suit, and (b) advising her to provide a proposed fee agreement if she were interested in pursuing the action for and on behalf of the bankruptcy estate, because her employment for that purpose required Bankruptcy Court approval. Plaintiff's Counsel indicates that she provided that information in late February and early March, 2010, and assumed that she would be properly employed. On that assumption, she indicates that she continued to perform legal services in connection with the Discrimination Suit. Plaintiff's Counsel further states she followed up regarding her employment in April, 2010, with Trustee's attorney, Jim Spinner ("Trustee's Counsel").

In June, Plaintiff's Counsel obtained an extension of time for discovery and dispositive motions in the Discrimination Suit, even though the question of her employment was unresolved. Later that month, she contacted Trustee's Counsel

MEMORANDUM OF DECISION - 3

about her employment.  Trustees Counsel advised her that he would handle the Discrimination Suit and had been directly negotiating with the attorney for the Department of Corrections ("Department's Counsel") for its settlement.  Neither Plaintiff's Counsel nor Launa Coonrod were aware of or contacted regarding any such settlement discussions, according to Plaintiff's Counsel.

On September 14, Trustee's Counsel filed a "Stipulation for Settlement" of all claims in the Discrimination Suit.  Doc. No. 37 ("Stipulation").[2]  The Stipulation indicates that, in return for $20,000 payable to the estate, all claims, federal or state, against the Department of Corrections would be compromised, settled and released.  It also notes that Plaintiff's Counsel had not been employed by the Trustee on behalf of the Debtors' estate because of the direct negotiations and tentative settlement.

The Stipulation also notes that, as of that date, no exemption in or to the claims being litigated had been asserted by Debtors.  The record reflects as much; Debtors had not listed the pre-bankruptcy Discrimination Suit or their claims against the Department of Corrections as an asset, and they had not asserted an exemption therein, as of the date of the Stipulation.  However, on November 4, Debtors filed amended schedules B and C.  *See* Doc. No. 47.  Interestingly, these

---

[2] The text of the Stipulation makes it clear that Trustee and the Department of Corrections entered into that agreement.  For some reason, Trustee's Counsel created an erroneous docket entry indicating that the Stipulation was one between Trustee and Debtors.  *See* Doc. No 37 (docket entry).

MEMORANDUM OF DECISION - 4

amendments did not disclose the nature or value of the asset (*i.e.*, the claims existing against the Department of Corrections as of the December 9, 2009, date of filing), nor assert exemptions as against the value of said claims. Instead, Debtors disclosed on schedule B (as "accounts receivable"[3]) a personal property interest described as "75% of wages from Settlement Agreement" and indicated the value of such property at $7,000. *Id.* at 2.[4] An exemption under Idaho Code § 11-207 is asserted in the amount of $5,250.00. *Id.* at 4 (amended sched. C).

Trustee filed, on the same September 14 date that the Stipulation was filed, a Motion for Approval of Settlement. Doc. No. 38 ("Motion"). Its terms track those of the Stipulation, described above. It was this Motion that came on for hearing on November 22.[5]

Debtors individually appeared at the hearing. Bankruptcy Counsel did not. Debtors objected to the Motion and to the proposed settlement.[6] When asked by the Court why there had been no objection filed and why their attorney was not

---

[3] This category of "accounts receivable" appears inapplicable to the unliquidated claims. The same should have been listed under sched. B, item 21 (other contingent or unliquidated claims).

[4] Why Debtors elected to assert a percentage interest, why they referred to a "settlement agreement" rather than properly to the total value of the claims as of the date of bankruptcy, and why they used a value of $7,000 for Debtors' interest is unclear.

[5] The Motion had been noticed for an October 20 hearing, but the Order of Partial Recusal caused a vacation of that hearing and a resetting before the undersigned.

[6] Mrs. Coonrod was visibly distraught, and Mr. Coonrod spoke for both of them.

MEMORANDUM OF DECISION - 5

present, Debtors indicated that Bankruptcy Counsel had demanded an additional $500 before he would represent them in connection with the proposed settlement. Their attorney also allegedly advised Debtors that he thought Plaintiff's Counsel might object to the settlement, apparently suggesting Debtors could rely on that objection, if made.

Part of Debtors' objection to the proposed settlement was that it reflected an inadequate recovery on the claims asserted in the federal court litigation. Part of their objection concerned the failure of Trustee or Trustee's Counsel to communicate with Debtors (or with Plaintiff's Counsel) about the details, merits and value of the litigation and claims before settling. And part of their objection was related to their contention that the Department had continued in its alleged improper actions against Mrs. Coonrod, and that there were post-petition and ongoing claims, which Debtors were afraid were included in or impacted by the settlement.

Plaintiff's Counsel appeared, and also raised an objection. Her's was two-fold. First, she objected because the settlement, though obtaining a cash recovery on certain past claims, did not address the non-monetary remedies sought in the litigation, and failed to address conditions of Mrs. Coonrod's ongoing employment by the Department. Plaintiff's Counsel noted that the settlement inadequately addressed the "retaliation" claims, and she further noted that there

MEMORANDUM OF DECISION - 6

were ongoing issues of retaliation since Mrs. Coonrod had returned to work, including conduct occurring post-bankruptcy. Second, Plaintiff's Counsel objected to the settlement because Trustee's Counsel had made use of Plaintiff's Counsel's efforts and work product (*e.g.*, discovery, and legal analysis of claims and liabilities), including even work she performed after having contacted Trustee and Trustee's Counsel about employment approval (*e.g.*, obtaining extension of deadlines). She therefore argued that, if the settlement were approved, she should be entitled to her contingency fee.[7] After all, she argued, it was her work on the claims and case that "led" to any settlement at all.

Trustee's Counsel appeared. He took the position that (a) Debtors had filed no written objection to the Motion, and therefore should not be heard to object; (b) they lacked standing to object to the settlement (a position maintained even though Trustee's Counsel acknowledged that an exemption had been claimed after the Motion was filed and before the hearing); and (c) the settlement met the standards for approval under Fed. R. Bankr. P. 9019 and case law. Trustee's Counsel acknowledged during his comments that neither he nor Trustee had consulted with Plaintiff's Counsel about the merits, strengths or weakness, or value of the case, nor vetted the proposed compromise with her. Instead, Trustee's Counsel

---

[7] As noted, she had also asked, on July 12 and prior to the Motion, for a § 503 administrative expense.

MEMORANDUM OF DECISION - 7

indicated, he had relied on the written discovery and depositions in the Discrimination Suit in order to inform his settlement discussions.

Department's Counsel appeared. He urged approval of the settlement and thereby the resolution of the Discrimination Suit. He did acknowledge that a settlement could only address claims that arose before the date of the bankruptcy petition, not those that arose and were independently assertable after bankruptcy. It was clear enough, though, that the settlement was meant to include, in as broad a fashion as allowable, all claims that could be included. This position is echoed by the expansive language of the Stipulation.

## DISCUSSION AND DISPOSITION

### A. Debtors have standing

Trustee took the position that Debtors lacked standing to appear, object and be heard. The argument is found unpersuasive.

#### 1. Lack of prior written objection

The first ground advanced by Trustee is the lack of a written, pre-hearing objection by Debtors. While it is true that Trustee's notice of hearing, Doc. No. 39, instructed that objections were to be filed in writing before the hearing, it was essentially a "deadline" established only by Trustee's Counsel's assertion that it be so. In effect, it is a means by which a proponent can ferret out potential opposition in advance of a hearing, avoid surprises, and better prepare to meet any

MEMORANDUM OF DECISION - 8

objection. To be sure, having objections prefiled not only aids the proponent, it also assists the Court in preparing, and often makes the hearings more focused and productive for all concerned. While the Court has at times facilitated this prudential practice by close questioning of counsel who appear and object only orally, it is by no means a given that all oral objections are summarily rejected.

First, the Court has an important role to play in considering compromises, even where there is no objection at all. *In re Marples*, 266 B.R. 202, 207, 01.3 I.B.C.R. 116, 118 (Bankr. D. Idaho 2001) (noting that creditors' silence is not determinative); *In re Lake City R.V., Inc.*, 226 B.R. 241, 243, 98.4 I.B.C.R. 104 (Bankr. D. Idaho 1998) (noting that the seminal Ninth Circuit case, *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1382 (9th Cir. 1986), requires the Court to make an "informed and independent judgment" as to the fair and equitable nature of the settlement, and that this cannot occur until after "the judge has appraised himself of all facts necessary for an intelligent and objective opinion" on the subject.) There are times where an oral objection raised for the first time at hearing assists the Court in performing this independent, important judicial function.

Second, the reason *why* a prior written objection was not filed is often an important consideration. Here, the absence of the written objection is largely if not entirely due to the abdication of duty by Bankruptcy Counsel, and perhaps due

MEMORANDUM OF DECISION - 9

to the dual focus of Plaintiff's Counsel, who was concerned about her compensation as well as her client's interests.

The absence of a prior written objection is not fatal.[8]

### 2. Debtors' interests in the compromise

This Court has previously noted that debtors often have an economic interest in a proposed compromise, and thus standing, even in cases where there is no "surplus" estate with a potential distribution to debtors under § 726(a)(6). Specifically, the existence of an exemption asserted against the litigated claims and their proceeds can satisfy the pecuniary interest requirement for standing. *In re Rake*, 363 B.R. 146, 151 (Bankr. D. Idaho 2007); *In re Olson*, 06.3 I.B.C.R. 63, 64 n.7, 2006 WL 2433448, at *2 n.7 (Bankr. D. Idaho July 24, 2006).

On November 4, prior to hearing, Debtors asserted an exemption in the claims and/or the settlement proceeds therefrom. Doc. No. 47. Even though that claim of exemption garnered a post-hearing (but still timely[9]) objection on December 1, Doc. No. 49, the Court has not yet heard or ruled on the exemption issue. Thus, Debtors had standing to object to the proposed compromise.

### B. Debtors' lack of legal assistance prohibits the Court from

---

[8] To the extent required, the Court would and will provide Debtors relief from the need to file a written objection to the Motion prior to the November 22 hearing. *See* § 105(a); Fed. R. Bankr. P. 1001.

[9] Pursuant to Fed. R. Bankr. P. 4003(b)(1), an objection to an amended claim of exemption is due within 30 days of the amendment.

MEMORANDUM OF DECISION - 10

**approving the compromise on this record**

The Court above explained what transpired at the hearing, and what the balance of the record reflects. It concludes that Debtors were left adrift in this process and were particularly ill-served by Bankruptcy Counsel. The extent of prejudice they have suffered prohibits the Court from validating the compromise over their *pro se* objection.

Bankruptcy Counsel agreed, according to his Rule 2016(b) statement, to provide representation of Debtors in "all aspects" of their case; there were no exclusions or conditions. And that statement also made clear that the total amount to be charged for such described services was $950. Yet, according to Debtors, Bankruptcy Counsel refused to assist them in objecting to the Motion unless they paid him an additional $500. Bankruptcy Counsel failed to appear at the November 22 hearing, even though his client's interests were at stake, and even though he was then (and still is) their counsel of record. LBR 9010.1(f). This conduct violates not just the agreement of representation reflected by the Rule 2016(b) statement, it violates Bankruptcy Counsel's professional and ethical responsibilities.[10]

---

[10] The record suggests there may be other issues with Bankruptcy Counsel's services and conduct.

First, as discussed above at notes 3 and 4, the nature of the amendment to schedule B and C is, at best, confusing. This gives rise to a concern whether it is complete, adequately

(continued...)

MEMORANDUM OF DECISION - 11

Debtors were, and are, entitled to an advocate at any hearing on approval of compromise of the Discrimination Suit. Certainly, Bankruptcy Counsel failed to provide them the advocate they needed, and left them to argue on their own behalf. They did so, and raised credible concerns with (a) the value of settlement, especially in light of the failure to be consulted, personally or through either of their attorneys, about Trustee's compromise of the case, and (b) with the scope of the settlement, in light of both the silence of the agreement as to non-monetary claims and in light of the alleged post-petition issues Debtors had with the Department.[11]

---

[10] (...continued) considered and well founded. It also gives rise to a concern of whether it is final, or may yet again be amended.

Second, during the hearing, Debtors indicated they had signed an original amended schedule B and C, but still had that original in their possession at the time of hearing and had not as of the hearing date delivered it to Bankruptcy Counsel. The ECF-filed version of the amendment purports to be signed by Debtors. Doc. No. 47 at 5. The electronic filing of this pleading by Bankruptcy Counsel constitutes an express affirmation by him that he had the executed original in his possession at the time of the electronic filing, and that the electronic version conformed exactly thereto. *See* Electronic Case Filing Procedures at 13. *See also* LBR 5003.1. *See generally In re Hurd*, 10.3 I.B.C.R. 68, 2010 WL 3190752 (Bankr. D. Idaho Aug. 11, 2010) (addressing ECF requirements and consequences of falsely representing signatures obtained). Moreover, at the time of this amendment, the Procedures required Bankruptcy Counsel to submit the conventionally signed declaration to the Court, which he did not do, generating a Corrective Action entry on November 18 and a Second Corrective Action entry on December 16 as the November 18 entry was not satisfied.

[11] The Court acknowledges that Plaintiff's Counsel raised some arguments about the settlement *per expressum*, and that in doing so, gave Debtors some assistance. Of course, Plaintiff's Counsel would be well-suited to address the factual and legal issues regarding the Discrimination Suit and its potential settlement. But Plaintiff's Counsel also voiced concerns aimed at advancing her interests in recovering payment from the settlement funds, separate and apart from advocating for her clients. Having two perspectives is not necessarily improper, but

(continued...)

MEMORANDUM OF DECISION - 12

### C. An inadequate showing was made in support of the motion

The standards applicable to Court consideration of a proposed compromise are well established and have been often articulated. *Rake*, for example, notes that trustees are provided discretion to settle claims and compromise disputes, but that the Court must thereafter approve the same as being "fair and equitable" and supported by an adequate factual foundation. 363 B.R. at 151-52. The Court is not a mere "rubber stamp" but, rather, must make an independent determination that the compromise is fair and equitable. *Id.*; *see also Olson*, 06.3 I.B.C.R. at 64-65 n.8. It can do so, as noted above, only after appraising itself of the facts sufficient to make an informed judgment. *See A & C Props.*, 784 F.2d at 1383. The burden of providing this factual information to the Court and meeting the *A & C Props.* standards "rests squarely on the Trustee." *Rake*, 363 B.R. at 152. Placing the burden on the trustee makes sense and is not onerous; after all, the trustee must first inform himself of all the relevant facts before he can make a decision exercising proper business judgment. *Id.* (citing *In re Arkoosh Produce, Inc.*, 03.3 I.B.C.R. 149, 153, 2003 WL 25273746 (Bankr. D. Idaho 2003).

Trustee's Counsel indicated that neither he nor Trustee discussed the Discrimination Suit or the potential terms of its settlement with Debtors or,

---

[11] (...continued)
the issues of approval of employment under § 327(e) and/or allowance of an administrative expense under the § 503 Motion were not before the Court.

MEMORANDUM OF DECISION - 13

importantly, with Plaintiff's Counsel. Trustee's Counsel relied on his own evaluation of discovery and depositions. Even if Trustee might ultimately decide not to seek § 327(e) approval to employ Plaintiff's Counsel, or might ultimately disagree on an informed, objective and principled basis with Plaintiff's Counsel's opinion, there is little reason for him not to solicit and consider that opinion. It was, of course, Plaintiff's Counsel who prepared the complaint and was prosecuting the litigation in federal court before bankruptcy. And, in addition to losing insight into the details of the litigation, which might impact what Trustee would ultimately deem to be a reasonable settlement, the failure to consult with Debtors or Plaintiff's Counsel left Trustee unaware of how the proposed settlement of the prepetition claims might effect Debtors' non-monetary claims or her post-petition claims.

In addition to these issues, the Court determines that there has yet to be an adequate showing that the amount of the settlement is in accord with the value of the claims that properly can be and are proposed to be settled. The case law requires Trustee to establish, in light of all the *A & C Props.* factors, that the settlement is based on "proper business judgment" and "falls above the lowest point in the range of reasonableness." *Rake*, 363 B.R. at 152 (citations omitted). The Court is not persuaded that the same has been established.

**CONCLUSION**

MEMORANDUM OF DECISION - 14

For all the foregoing reasons, the Court concludes that the Motion cannot be granted at this time and the compromise set forth therein cannot be approved. The Motion will be denied. The denial will be without prejudice to a subsequent motion under Fed. R. Bankr. P. 9019 and hearing on proper notice.[12]

An appropriate order will be entered by the Court on this Decision.

DATED: December 17, 2010

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[12] Any hearing on compromise will be set before the undersigned given the Order of Partial Recusal. All other matters in the case are to be set before the Hon. Jim D. Pappas, U.S. Bankruptcy Judge.

MEMORANDUM OF DECISION - 15