# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

In Re:

JOSEPH W. COONROD and
LAUNA COONROD,

Debtors.

Bankruptcy Case
No. 09-41934-JDP

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

    James A. Spinner, Pocatello, Idaho, Attorney for R. Sam Hopkins, Chapter 7 Trustee.

    DeAnne Casperson, HOLDEN KIDWELL HAHN & CRAPO, P.L.L.C., Attorney for the Law Firm, Creditor.

### *Introduction*

In this chapter 7[1] case, the law firm of Holden, Kidwell, Hahn & Crapo, P.L.L.C.'s ("HKHC") filed a Motion for Allowance of

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 1

Administrative Expense. Dkt. No. 33. Trustee R. Sam Hopkins ("Trustee") objected. Dkt. No. 87. The Court heard argument concerning the motion on April 10, 2012, after which it took the issues under advisement. After due consideration of the record in this case, the submissions of the parties and arguments of counsel, as well as the applicable law, this Memorandum disposes of the motion. Fed. R. Bankr. P. 7052; 9014.

## *Facts*

Debtor Launa[2] Coonrod was, and still is, employed by the Idaho Department of Correction ("IDOC"). In September 2008, she retained HKHC to represent her in a pregnancy discrimination and retaliation claim against her employer. Dkt. No. 34, ¶ 2. DeAnne Casperson served as the lead attorney representing Debtor. After exhausting administrative remedies, as required by the Idaho Code, Ms. Casperson filed a civil action against IDOC in U.S. District Court on May 22, 2009.[3] *Id*.

---

[2] The Court uses Debtors' first names for the sake of clarity. No disrespect is intended.

[3] *Launa Coonrod v. State of Idaho, Dept. of Corrections*, Case No. CV-09-00247-EJL. The Court will refer to the docket in that case as "Dist. Ct. Dkt."

MEMORANDUM OF DECISION – 2

A few months later, on December 9, 2009, Debtors Joseph and Launa Coonrod filed a chapter 7 bankruptcy petition. Dkt. No. 1. Debtors did not inform Ms. Casperson or anyone else at HKHC about the bankruptcy filing, and their initial bankruptcy schedules did not include any information concerning the pending discrimination claim or litigation.[4]

On February 4, 2010, Ms. Casperson received a letter from Trustee informing her that, in his opinion, Launa's discrimination claim was property of the bankruptcy estate. Dkt. No. 34, Ex. A. This is how Ms. Casperson first learned of the bankruptcy filing. *Id.* at ¶ 3. In the letter, Trustee requested copies of all documents, as well as an update on the status of the lawsuit and an estimation of the value of the claims. *Id*. at Ex. A. Trustee's letter also stated that "if you are interested in pursuing the claim on behalf of the bankruptcy estate, please send a proposed fee agreement. We will need to obtain Court approval of your employment."

---

[4] Debtors' schedules were amended only after her discrimination claims were settled. Their amended schedule B listed 75% of the settlement amount as personal property in the form of accounts receivable in the amount of $7,000, and she claimed that same accounts receivable exempt on schedule C in the amount of $5,250. Dkt. No. 47.

MEMORANDUM OF DECISION – 3

*Id*. In response, Ms. Casperson sent the requested information and documentation to Trustee, including a request to be appointed as special counsel to pursue the discrimination claims. Dkt. No. 34, ¶ 5.[5]

On March 10, 2010, Trustee filed an Application for Leave to Retain Attorneys. Dkt. No. 22. However, in the Application, Trustee did not request the appointment of Ms. Casperson as special counsel, but rather his usual bankruptcy counsel, James Spinner. *Id*. The application was generic in nature, and nondescript concerning what sorts of services Mr. Spinner would provide to Trustee, or more particularly, what assets or interests of the estate he would pursue. *Id*. Debtors were served with a copy of Trustee's application, but no notice of the application was sent to Ms. Casperson.[6] *Id*. When no objections to Trustee's application were filed, *see* Dkt. No. 25, on April 6, 2010, the Court entered an order granting the application and approving Mr. Spinner's employment. Dkt. No. 26.

---

[5] The information on the case was sent in two batches, on February 25, 2010, and March 5, 2010. Dkt. No. 34, ¶ 5.

[6] Trustee's application was amended the following day, but the amendment was not substantive. Dkt. No. 24.

MEMORANDUM OF DECISION – 4

Meanwhile, having on at least two prior occasions been employed as special counsel for a trustee, and believing that HKHC would be employed by Trustee in this case to represent the estate in the discrimination action, Ms. Casperson continued to perform the legal services in the case that she considered to be critical, such as meeting upcoming deadlines and completing some discovery, including preparing for and attending both Debtors' depositions. *Id.* at ¶ 6. Nevertheless, Ms. Casperson knew from her experiences that, if she were to be employed by Trustee, she should expect to receive a proposed application to employ the firm as special counsel. When no such application arrived, in late March or early April, 2010, she called Trustee to inquire. *Id.* at ¶ 7. Curiously, Trustee suggested she call Mr. Spinner's office, who simply told her that he did not know anything about her employment as yet. *Id.*

In early June 2010, Ms. Casperson again contacted Mr. Spinner to inquire about the status of the case and her role. *Id.* at ¶ 8. She was again informed that he did not know whether Trustee would seek to have HKHC appointed as special counsel. It was also at this time that she

MEMORANDUM OF DECISION – 5

learned that Mr. Spinner and counsel for the IDOC had been communicating about the pending discrimination suit. Nevertheless, Mr. Spinner did not enter an appearance in the discrimination suit, and Ms. Casperson worried that deadlines were looming in the action, though she had already stopped actively working on it. On June 11, 2010, she requested an extension of pending deadlines in the case, which the District Court granted. *Id*. at ¶ 9, Dist. Ct. Dkt. Nos. 19, 20.

During this time, Trustee and Mr. Spinner reviewed the documents forwarded by HKHC about the discrimination claim, and were contacted by the IDOC regarding the law suit. Trustee and his counsel determined that they would likely be able to resolve the action via a compromise themselves, and therefore, did not need to employ HKHC as special counsel.

On June 23, 2010, Ms. Casperson sent a letter to Mr. Spinner in which she expressed concern over the delay in her employment. Dkt. No. 34 at ¶ 10. In response, the following day, Mr. Spinner sent a letter to Ms. Casperson informing her that Trustee did not intend to seek to employ

MEMORANDUM OF DECISION – 6

HKHC as special counsel. Dkt. No. 34, Ex. B. As things turned out, Trustee and IDOC tentatively settled Debtor's claim for $20,000 in late June 2010. *Id*. at ¶ 12.

On July 12, 2010, HKHC filed a Motion for Allowance of Administrative Expense Claim along with Ms. Casperson's supporting affidavit. Dkt. No. 33-34. HKHC acknowledges that it entered into a contingency fee agreement with Debtors to handle the discrimination action, under which the firm would be paid one-third of any recovery, plus reimbursable costs. *See* Dkt. No. 34, Ex. C. Thus, HKHC contends that it should be entitled to an administrative expense in this bankruptcy case in the amount of $6,666.00 plus costs of $1,130.48, for a total of $7,796.48. *Id*. at ¶¶ 21-23.

On September 14, 2010, Trustee filed a stipulation in the bankruptcy case in which he and the IDOC agreed to the $20,000 settlement. Dkt. No. 37. At the same time, Trustee filed a motion asking the Court to approve the compromise. Dkt. No. 38. The Court denied Trustee's motion. Dkt. Nos. 50, 51.

MEMORANDUM OF DECISION – 7

On March 8, 2011, Mr. Spinner filed a notice of appearance in the District Court action, and on March 14, 2011, Ms. Casperson filed a motion to withdraw as Debtor's counsel, which motion the District Court granted on March 16, 2011. Dist. Ct. Dkt. Nos. 26, 28, 29. Subsequently, on May 19, 2011, Trustee and the IDOC filed a second stipulation for settlement of the discrimination claims for $20,0000 in the bankruptcy case, and another motion for Court approval. Dkt. Nos. 62, 63. HKHC objected to approval of the proposed settlement as did the Debtors. Dkt. Nos. 69, 70. The Court eventually overruled the objections, and approved the settlement. Dkt. No. 78.[7]

---

[7] Chief Judge Myers presided over both hearings concerning the proposed compromise. *See* Dkt. No. 42. Although the settlement terms were substantially the same each time, the Court initially found that Trustee had not met his burden under *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377 (9th Cir. 1986), and that questions lingered as to the scope of the settlement in light of the claims raised in the complaint. Moreover, the Court concluded that Debtors did not have adequate representation in the settlement process, as neither Trustee or his attorney had personally consulted with Debtors, their bankruptcy counsel, or HKHC before agreeing to settle the claim against IDOC. Finally, the Court found that Debtors' bankruptcy counsel had abdicated his responsibility to counsel them by allegedly demanding an additional $500 fee to object to the proposed settlement and by not appearing at first hearing. These flaws in the process were eventually overcome, and the settlement was approved on July 18, 2011. Dkt. Nos. 75-78.

MEMORANDUM OF DECISION – 8

On January 30, 2012, Trustee objected to HKHC's motion for allowance of an administrative expense claim. Dkt. No. 87. HKHC responded to Trustee's objection, and Trustee replied. Dkt. Nos. 92, 99.

The motion hearing took place on April 10, 2012, after which the Court required Ms. Casperson to file a brief explaining the legal basis of her motion for an administrative expense. No brief was ever filed.[8]

*Analysis and Disposition*

The Court notes one significant problem with HKHC's motion for allowance of an administrative expense right out of the gate: no notice of the motion, or of the hearing on the motion, was ever served on all creditors and other interested parties as required by Rule 9014 and LBR 2002.2.[9] Instead, it was Trustee who ultimately set the motion for hearing,

---

[8] On June 7, 2012, Trustee filed a Notice of Non-Filing of Brief and Request for Entry of Order, Dkt. No. 102.

[9] It appears that notice of the motion was sent only to Debtors' bankruptcy counsel, Trustee, Mr. Spinner, creditor U.S. Bank, the U.S. Trustee, and the Division of State Payroll. Dkt. No. 33. Because an allowed administrative expense is afforded priority of payment in a chapter 7 case under § 507(a)(2), other creditors holding claims are entitled to receive notice of the HKHC motion and hearing, and to object to the motion.

MEMORANDUM OF DECISION – 9

likely because the bankruptcy case could not be finally administered and closed until the motion was resolved. The flaw regarding proper notice has yet to be remedied. Accordingly, this procedural defect renders the Court unable to grant HKHC the specific relief it seeks.

Despite this complication, given the nature of the issues, and that those issues have been fully briefed and argued by the parties, the Court deems it worthwhile to consider whether there is any legal basis for HKHC's administrative expense claim. Should the Court determine that some legal support exists for an administrative expense claim, additional, proper notice to other interested parties could then be undertaken.

Another impediment to the Court's work in this case results from the fact that HKHC failed to file a post-hearing brief as directed by the Court. As a result, the Court is left to determine, as best it can, the legal basis for the argument that the firm is entitled to an administrative expense.

In its initial brief, filed in July 2010, HKHC, without analysis, cited to § 503(b)(4) as the statutory foundation to assert an administrative

MEMORANDUM OF DECISION – 10

claim.[10] However, the Court concludes this statute is of no help to HKHC in this case. The Code provides, in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including–
> * * * * *
>> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant[.]

11 U.S.C. § 503(b)(4). As this statute specifically references subparagraphs (A) - (E) of paragraph (3), it is important to consider the text of those

---

[10] At oral argument, counsel for HKHC contended that its employment as special counsel for the bankruptcy estate under § 327(e) should be approved by the Court *nunc pro tunc*. Of course, that argument lacks merit, since the Code makes clear that it is the trustee who must seek approval of special counsel's employment. *See* § 327(e) ("The trustee, with the court's approval, may employ, for a special purpose . . . an attorney . . . ."). Trustee has expressly declined to do so in this case.

MEMORANDUM OF DECISION – 11

subparagraphs in order to determine whether any of them apply in this case.  They provide that, after notice and a hearing, the Court may allow, as administrative expenses:

> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
> > (A) a creditor that files a petition under section 303 of this title;
> > (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;
> > (C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;
> > (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; [and]
> > (E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian[.]

11 U.S.C. § 503(b)(3).  As can been seen, the plain language of § 503(b) allows, under certain circumstances, administrative expense status for

MEMORANDUM OF DECISION – 12

actual and necessary expenses, other than compensation, incurred by creditors. § 503(b)(3). Paragraph (4) of § 503(b) allows reasonable compensation for professional services to be given administrative expense status, but only if the "*expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3). . . .*" § 503(b)(4) (emphasis added). In other words, to constitute an allowed administrative expense, first an expense must be allowable under one of those subparagraphs, and then it must be reasonable in amount.

In order for HKHC's fees and costs to be eligible for administrative expense status under § 503(b), as a creditor, HKHC must fit into one of the enumerated subparagraphs. However, HKHC did not: (A) file an involuntary petition; (B) recover property transferred or concealed by the debtor; (C) become a creditor in connection with prosecuting a criminal case; (D) make a substantial contribution in a case under chapters 9 or 11; or (E) act as a custodian according to § 543.

Subparagraph (E) is the most likely to be applicable to HKHC under these circumstances, or perhaps more properly, that subparagraph is the

MEMORANDUM OF DECISION – 13

only provision the Court can not immediately rule out.  However, even if HKHC were to contend that it is the physical or constructive custodian of Debtors' discrimination case files, general knowledge and legal theory of Debtor's case, HKHC does not fit the statutory definition of "custodian" under the Code :

> (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
> (B) assignee under a general assignment for the benefit of the debtor's creditors; or
> (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11 U.S.C. § 101(11).  Thus, the Court concludes that § 503(b) offers no support for HKHC's asserted administrative expense claim for its work done on the discrimination case prior to, and following, the filing of the bankruptcy case.

    The burden of proving an entitlement to an administrative expense

MEMORANDUM OF DECISION – 14

is on the claimant. *In re Sanders Grain Farms*, 07.2 IBCR 19, 19 (Bankr. D. Idaho 2007) (quoting *In re Cent. Idaho Forest Prod.*, 04.4 IBCR 159, 161 (Bankr. D. Idaho 2004)). While the Court is given broad discretion to grant administrative expense requests, "it is required to construe § 503(b) narrowly to keep costs to a minimum and preserve the limited assets of the bankruptcy estate for the benefit of unsecured creditors." *Id.* (citing *Microsoft Corp. v. DAK Indus. Inc. (In re DAK Indus. Inc.)*, 66 F.3d 1091, 1094 (9th Cir. 1995); *In re TSB, Inc.*, 302 B.R. 84, 87 (Bankr. D. Idaho 2003)).

The Code is particular about how bankruptcy estate professionals are to be employed and compensated, and the Court has enforced its mandates carefully. *See, e.g.*, §§ 327 – 330; *In re Taylor Quality Concrete, Inc.*, 07.1 IBCR 3 (Bankr. D. Idaho 2007) ("lack of familiarity with the requirements of the Bankruptcy Code and Rules does not constitute exceptional circumstances justifying retroactive approval of the [application for employment]"). HKHC acknowledges that Ms. Casperson was familiar with the process, having been employed as special counsel by bankruptcy trustees on at least two prior occasions. It is therefore fair to

MEMORANDUM OF DECISION – 15

assume that HKHC and Ms. Casperson were aware that their proposed client, a bankruptcy trustee, would need to apply for approval of the firm's employment as special counsel. While it is commendable that Ms. Casperson made genuine efforts to preserve her client's discrimination claim in the civil action so as not to suffer on account of delay or missed deadlines, the hard truth is that, in doing so, HKHC served Debtors at the risk of not being paid via the bankruptcy estate, the new owner of the claim.

The Court is mindful that HKHC, and Ms. Casperson in particular, expended considerable time, effort and expertise on Debtors' behalf in the discrimination case. The Court can also comfortably speculate that at least some of HKHC's work product was utilized by Trustee and Mr. Spinner in negotiations with IDOC, and enhanced the opportunity for Trustee to settle the civil action. Admittedly, it seems unfair for HKHC to go uncompensated for its efforts.

Moreover, as noted by the Court during oral argument, the approach taken here by Trustee and his attorney appeared less than

MEMORANDUM OF DECISION – 16

forthright. Indeed, as the Court stated then, Trustee's letter to Ms. Casperson served as an "invitation to a mistake," in that it suggested, without promising, that Trustee would seek to have HKHC employed as his special counsel if the claim had merit and the firm proposed a reasonable fee agreement, both of which conditions were satisfied. Based upon these facts, and Ms. Casperson's past experience with trustees, she was perhaps justified, if not a little naive, in assuming all was well.

Regardless of these circumstances, however, the outcome under the Code is clear. HKHC has not met its burden to demonstrate that it is entitled to allowance of an administrative expense claim.[11]

*Conclusion*

Inequitable as it may seem, HKHC's motion for an administrative expense will be denied by separate order.

---

[11] HKHC has apparently never asserted a secured claim in this case. The Court therefore expresses no opinion concerning its right to do so.

MEMORANDUM OF DECISION – 17

Dated: June 12, 2012

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 18